UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHRISTOPHER STEPHEN JONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:21-CV-123-KAC-DCP ) ) |
| STATE OF TENNESSEE, TONY PARKER, LISA PARKS, and MELISSA CAMPBELL, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Stephen Jones, a Tennessee Department of Correction ("TDOC") inmate proceeding pro se, filed an Amended Complaint alleging that the state-sanctioned collection of funds from his inmate account to pay the costs of his criminal prosecution violates federal law, state law, and the Constitution [Doc. 30]. Defendants filed a motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim [Doc. 31], and Plaintiff filed a response opposing the motion [Docs. 35 and 36][1]. While Defendants' motion was pending, Plaintiff filed two Motions for "Leave to Supplement the Complaint" [Docs. 63, 64], which the Court fairly construes as motions to file a Second Amended Complaint. In his proposed Second Amended Complaint, Plaintiff would add new claims against twelve additional defendants who were not parties in his Amended Complaint. Moreover, the proposed claims in the Second Amended Complaint are not related to the claims Plaintiff raised in his Amended

---

[1] Plaintiff filed additional, substantially similar responses at Doc. 39 and Doc. 40, but the Court disregards those filings, as they are unsigned, and therefore, were submitted in contravention of Federal Rule of Civil Procedure 11(a).

Complaint. For the reasons that follow, the Court (1) denies Plaintiff's motions to file a Second Amended Complaint and (2) grants Defendants' motion to dismiss.

## I. PLAINTIFF'S REQUESTS TO FILE A SECOND AMENDED COMPLAINT

Federal Rule of Civil Procedure 15(a)(2) provides that "the court's leave" is required for Plaintiff to file a Second Amended Complaint at this point in the litigation. *See* Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave"). The Rule also instructs that the Court "should freely give leave **when justice so requires.**" *Id.* (emphasis added). However, "'when the matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified.'" *Whipple v. Tennessee Bd. of Paroles*, No. 18-5390, 2019 WL 1804845, *4 (6th Cir. Jan. 3, 2019) (quoting 6A ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1506 (3D ED. 2018) (citations omitted) (cleaned up)).

Here, Plaintiff seeks to add new claims that are unrelated to the claims in his Amended Complaint against twelve new defendants who were not parties in his Amended Complaint. Permitting him to amend his complaint again to add such claims and parties would not be just. Nor would it promote judicial economy or the speedy disposition of the dispute between the individuals and entities already Parties to this action. Further, there is nothing to suggest that Plaintiff could assert his proposed additional claims against the twelve additional defendants in a separate action. *See Whipple*, 2019 WL 1804845 at *4. Accordingly, the Court denies Plaintiff's requests to file a Second Amended Complaint. If Plaintiff wishes to raise his new claims against the newly-identified defendants, he may do so in a separate action.

2

## II. ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

In his operative Amended Complaint, Plaintiff alleges that he entered TDOC custody on May 26, 2015 and has at all relevant times been housed at the Bledsoe County Correctional Complex ("BCCX") [Doc. 30 at 2, 5]. The issue of costs and fees was never raised during Plaintiff's judgment or sentencing, and therefore, the State was made liable for the costs and fees associated with Plaintiff's prosecution under Tenn. Code Ann. § 40-25-129(a)(1).

When he filed his Amended Complaint, Plaintiff was employed by the Tennessee Rehabilitative Initiative in Correction ("TRICOR") and worked on goods to be sold by Shaw Flooring Group, Inc., a federally funded Prison Industry Enhancement Certification Program ("PIECP") partner of the TRICOR program [*Id*. at 6]. Plaintiff was required to relinquish mandatory obligations on his PIECP wages under Tenn. Code Ann. § 41-6-206(a)(2) and (4), which deduct forty percent (40%) of Plaintiff's gross earnings [*Id*. at 6]. Under PIECP, Congress has limited garnishment to a maximum of eighty percent (80%) of gross wages [*Id*. at 8 (citing 18 U.S.C. § 1761(c)(2))].

On August 14, 2019, the Trust Fund Department ("TFD") of BCCX issued a notice to Plaintiff from the TDOC Central Trust Fund Administration ("CFTA") advising Plaintiff that the State had paid $4,038.54 in Plaintiff's criminal case [*Id*. at 5]. Plaintiff maintains that the notice falsely stated that TDOC may recover criminal court costs under Tennessee law Section 40-25-143; that CTFA would automatically set up deductions of fifty percent (50%) of all his deposits until the court costs are repaid; and that there was no other type of payment plan available, because the monies were automatically collected through TOMIS (the "Task Order Management and Information System") [*Id*.]. Plaintiff alleges that Tenn. Code Ann. § 40-25-143 confers authority to TDOC to collect fees but does not operate as a mandate [*Id*. at 10]. Commissioner Tony Parker

3

approved the implementation of TDOC Policy 208.03, which is a policy governing the debt collection practices contained in Tenn. Code Ann. § 40-25-143(b) [*Id*. at 11].

BCCX's TFD began collecting money from Plaintiff's net wages, and on January 12, 2021, the TFD began deducting from Plaintiff's gross wages [*Id*. at 6]. Only four percent (4%) of Plaintiff's gross wages remaining after TFD's collection [*Id*.]. Plaintiff discovered the switch from net wages to gross wages on March 13, 2021 [*Id*.].

Plaintiff maintains that TDOC's collection of money from his earned wages is protected by both federal and State garnishment laws, citing 15 U.S.C. § 1673 and Tenn. Code Ann. § 26-2-106 [*Id*. at 7]. He contends that he is required to purchase supplemental nutrition, footwear, and necessary hygiene supplies through TDOC, and that the disruptions to his living wage not only harm him, but also result in disruptions to interstate commerce [*Id*. at 8-10]. Plaintiff alleges that he is an "employee" under Internal Revenue law, and that he must account for and pay taxes on earned wages [*Id*. at 10]. As a result of Defendants' actions, Plaintiff maintains, he will not be able to pay tax owed on his employment wages for 2021 [*Id*.].

Plaintiff states that he does not owe the State any debt related to his convictions, and that both Tenn. Code Ann. § 40-25-143 and TDOC policy 208.03 abridge constitutional principles of due process and equal protection; that they serve to defraud the federal government; and that Defendants, by enacting and enforcing these collection laws/policies, have conspired to deprive him of due process [*Id*. at 12-17]. Plaintiff contends that Defendants are liable in this action because the State enacted Tenn. Code Ann. § 40-25-143(b), Tony Parker approved TDOC policy 208.03 containing debt-collection practices, Lisa Parks directed the notice of collection from Plaintiff's account pursuant to TDOC policy, and Melissa Campbell initiated the execution of the debt collection [*Id*. at 11]. Plaintiff asks the Court to award monetary, declaratory, and injunctive relief [*Id*. at 17-20].

### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a plaintiff's claims, all factual allegations in the complaint must be taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the Supreme Court has cautioned:

> Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 679 (internal citations omitted).

Additionally, while Plaintiff's claim survived screening under the Prison Litigation Reform Act ("PLRA"), the standard for a motion to dismiss is higher than the frivolity standard in 28 U.S.C. § 1915. *See, e.g, Leach v. Corr. Corp. of Am.*, No. 3:16-CV-2876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (stating the required screening of a plaintiff's complaint under the PLRA is "a lower burden for the plaintiff to overcome in order for his claims to proceed" than a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure).

### B. Analysis

Plaintiff primarily seeks relief in this action under 42 U.S.C. § 1983 [*See, generally*, Doc. 30]. To state a claim for relief under Section 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "'is not itself a source

of substantive rights.'" *Graham v. Connor,* 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Rather, it "provides a method for vindicating federal rights elsewhere conferred" by the Constitution or federal law. *Id*. (internal quotation marks omitted). Accordingly, where there is no indication in a statute's text that Congress intends for that statute to create new enforceable rights, there is no basis for suit, whether under Section 1983 or an implied right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

1. **Recovery of Court Courts and Fees**

A preliminary question in this case is whether Plaintiff may be required to pay the costs associated with his criminal prosecution under Tennessee law. Plaintiff maintains that the State is liable for the costs and fees associated with his felony criminal prosecution under a Tennessee statute providing, in relevant part, that the State may not pay or be liable for costs or fees in a criminal prosecution except where prosecution in a felony case has proceeded to verdict in the circuit or criminal court. Tenn. Code Ann. § 40-25-129(a)(1). However, Tenn. Code Ann. § 40-25-143 provides:

> (a) The department of correction shall have the authority to collect from the inmate trust fund account of any defendant in its custody those moneys necessary to satisfy any unpaid costs that have been imposed upon the defendant.
>
> (b) When the state has paid the costs in a case accruing under § 40-25-130(5) [where defendant is indigent at time of conviction], and the defendant is in the custody of the department of correction, the department shall have the authority to collect from the inmate trust fund account of the defendant those moneys necessary to reimburse the state for the payment of the costs. Any amount so collected shall be deposited in the state general fund.

Tenn. Code Ann. § 40-25-143. The fact that the State initially paid the costs and fees in Plaintiff's criminal case does not mean that it cannot now recover those costs from Plaintiff. *See, e.g., Waters v. Ray*, No. M2008-02086-COA-R3-CV, 2009 WL 5173718, at *5 (Tenn. Ct. App. Dec. 29, 2009) (finding "even if costs are billed to the State, subsequent recovery from the convicted defendant is

6

not precluded" under Tenn. Code Ann. § 40-25-123). In fact, the statute cited by Plaintiff, Tenn. Code Ann. § 40-25-129, explicitly states that "this section does not absolve a convicted defendant of liability of cost" and that it "does not prohibit the department of correction from collecting from an inmate trust fund in accordance with 40-25-143." Tenn. Code Ann. 40-25-129 (5), (7). Therefore, TDOC has authority to recoup the costs of Plaintiff's prosecution under Tennessee law.

2. **Collection of Court Costs and Fees**

Having determined that the State may recover the fees and costs associated with Plaintiff's prosecution under Tennessee law, the Court must determine if the collection of funds violates Plaintiff's due process or equal protection rights.

a. **Equal Protection**

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. To state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Plaintiff has not alleged that he is a member of a suspect class, nor has he demonstrated a fundamental right to wages for the work he performed while incarcerated. *See, e.g., Carter v. Tucker*, No. 03-5021, 69 F. App'x 678, 680 (6th Cir. July 1, 2003) (noting there is no property right to inmate employment or to wages for work performed by an inmate); *Miller v. Campbell*, 108 F. Supp. 2d 960, 967 (W.D. Tenn. 2000) (finding constitutional and federal law "do not create a property right for inmates in a job, [and] they likewise do not create a property right to wages for work performed by inmates") (collecting cases).

7

Therefore, Plaintiff may prevail on this claim only if he can demonstrate that the Tennessee statute lacks a rational basis. A statute will not be overturned unless "the varying treatment of different groups is so unrelated to the achievement of any combination of legitimate purposes that [the Court] can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979). Any "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961)

Here, Plaintiff fails to articulate how the statute allowing the State to recoup costs an inmate owes lacks a rational basis. Moreover, while Plaintiff argues that the statute discriminates against indigent convicts who are incarcerated, Tennessee law provides that all convicted defendants may be held responsible for court costs. *See* Tenn. Code Ann. § 40-25-123; Tenn. Code Ann. § 40-24-105(a) (providing the trial court may collect fines, costs, and litigation taxes "in the same manner as a judgment in a civil action"). Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and the Court dismisses this claim.

### b. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The clause (1) guarantees a fair procedure and (2) bars certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them. *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990). Due process "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed," *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotation marks and citations omitted).

8

Plaintiff's allegations fail to present a viable due process claim, because he has no protected property or liberty interest in the employment or wages earned through a prison work-release program. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (confirming that "[t]he Constitution does not create a property or liberty interest in prison employment"); *Carter*, 69 F. App'x at 680 (holding inmates have no property right to wages); *Garza v. Miller*, 688 F.2d 480, 485 (7th Cir. 1982) (finding inmate has no property or liberty interest in prison employment and "[e]xistence of a cognizable liberty or property interest is also necessary to trigger the requirements of substantive due process"); *Jennings v. Lombardi*, 70 F.3d 994, 995 (8th Cir. 1995) (holding "[t]here is no constitutional right to prison wages and any such compensation is by the grace of the state") (citation omitted); *see also Miller*, 108 F.Supp.2d at 967 (holding Constitution creates no property right to inmate wages). Moreover, Plaintiff cannot maintain a due process claim for the intentional deprivation of any property he may be entitled to, because he failed to demonstrate that Tennessee's post-deprivation procedures are inadequate to address the alleged wrong. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983) (holding plaintiff has burden of pleading and proving inadequacy of state processes in due process claim for procedural deprivation of property); *see also Hudson v. Palmer*, 468 U.S. 517 (1984) and *Parratt v. Taylor*, 451 U.S. 527 (1981). Tennessee law provides adequate remedies for the alleged loss of property. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985); *McLaughlin v. Weathers*, 170 F.3d 577, 581-92 (6th Cir. 1999). Plaintiff has not shown that he has attempted to use the allotted process to seek post-deprivation remedies and that it was inadequate.

Finally, Plaintiff has not been deprived of his funds. Inmates are not "deprived" of their funds in a constitutional sense when the funds are deducted to pay court costs and fees, because the funds are being used for the inmate's benefit to pay his debt. *See Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997); *Gallagher v. Lane*, No. 03-3363, 75 F. App'x 440, 441-42 (6th Cir.

9

Sept. 16, 2003); *Erdman v. Martin*, No. 02-1302, 52 F. App'x. 801, 803-04 (6th Cir. Dec.12, 2002). Accordingly, the Court dismisses Plaintiff's due process claims.

### 3. Fraud

Plaintiff's third claim is that Defendants are defrauding the federal government of income tax [Doc. 30 p. 14-15]. The parties argue over whether Plaintiff, as a prisoner employed in a work release program, may be considered an "employee" under the law. However, the Court need not resolve this issue, because Plaintiff has no right to raise a tax-fraud claim on behalf of the United States Government.

Article III of the Constitution requires the party invoking federal jurisdiction to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). A plaintiff does not have standing to raise claims generally seeking "vindication of the rule of law." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998) (citations omitted). The Supreme Court has held that "although a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Id*. at 107 (citations omitted); *see also Brinkman v. Liberty Tax Serv.*, No. CV 10-192-HU, 2010 WL 5158537, *2 (D. Or. Sept. 24, 2010) ("Brinkman's complaints about injury to the public at large, the government's loss of tax revenues, and the threat to national security are not actual or particularized injuries to himself, do not satisfy the requirements for third party standing, and are not redressible by this court."), *rep. and recommendation adopted*, 2010 WL 5157140 (D. Or. Dec. 14, 2010). Therefore, although Plaintiff expresses concern about the effect of Defendants' alleged tax fraud on other prisoners and the Government, he is "limited to alleg[ing] violations of his own constitutional rights." *See Dodson v. Wilkinson*, No. 06-4136, 304 F. App'x

434, 438 (6th Cir. Dec. 24, 2008) (citing *Newsom*, 888 F.2d at 381). Accordingly, the Court dismisses this claim.

### 4. Conspiracy

Next, Plaintiff alleges that Defendants, by enacting and/or enforcing policies collecting funds from Plaintiff's inmate trust account, conspired to deprive him of his due process rights [Doc. 30 at 16-17]. To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), Plaintiff must establish four elements: "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to a person or property, or a deprivation of a right or privilege of a United States citizen." *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). The Court has already determined that Plaintiff has not sufficiently alleged that any federal right or privilege of his was violated. Moreover, Plaintiff has not demonstrated that the alleged conspiracy was motivated by any class-based animus, such as race, necessary to sustain this claim. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992). Accordingly, Plaintiff fails to state a conspiracy claim under Section 1985, and the Court dismisses this claim.

### 5. Remaining Statutes

Plaintiff also contends that the collection of funds from his inmate account under TDOC policy and statutory law violates the garnishment restrictions in the Consumer Credit Protection Act, 15 U.S.C. § 1671, *et seq.*, and Tenn. Code Ann. § 26-2-106. However, a private right of action "to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The wage-garnishment portions of the Consumer Credit Protection Act (15

11

U.S.C. §§ 1671-1677) do not provide a private cause of action. *Colvert v. Roling*, No. 06-1058, 233 F. App'x 587, 590 (8th Cir. May 14, 2007) (holding private right of action does not exist under Consumer Credit Protection Act section governing restrictions on garnishment of wages); *Le Vick v. Skaggs Cos.*, 701 F.2d 777, 779 (9th Cir.1983); *Ward v. Thompson*, No. 1:13-cv-580, 2015 WL 3948190, at *13 (W.D. Mich. June 29, 2015). Courts have also noted that Section 1676 specifically provides that "'the Secretary of Labor . . . shall enforce provisions of this subchapter.'" *Le Vick*, 701 F.2d at 779 (quoting 15 U.S.C. § 1676). Because there is no private cause of action for an alleged violation of wage garnishment limitations, "there can be no section 1983 action for violation" of those provisions. *See Burris v. Mahaney*, 716 F. Supp. 1051, 1058 (M.D. Tenn. 1989).

Plaintiff also alleges violations of various provisions of the Consumer Credit Protection Act in Subchapters III (15 U.S.C. §§ 1681-1681x), IV (15 U.S.C. §§ 1691-1691f), and V (15 U.S.C. §§1692-1692p). Subchapter III involves federal regulations on credit reporting agencies, subchapter IV involves equal credit reporting opportunity, and subchapter V involves deceptive debt collection practices. These subchapters are irrelevant to the instant action and have no relation to any issue or factual allegation raised by Plaintiff in his Amended Complaint.

Next, Plaintiff alleges a violation of 18 U.S.C. § 1761, which involves the transportation of prison goods in interstate commerce, and 26 U.S.C. § 7212, which involves threatening or intimidating a federal official. Neither of those statutes has any relevance to the withholding of Plaintiff's wages. Moreover, the statutes are criminal in nature and do not provide a basis for a private cause of action in a civil suit. *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *see also Concert v. Luzerne Cnty. Children & Youth Servs.*, No.

3:CV-08-1340, 2008 WL 4753709, *3 (M.D. Pa. Oct. 29, 2008) ("Criminal statutes do not generally provide a private cause of action nor basis for civil liability.").

Plaintiff also cites to 26 U.S.C. § 7402, but this statute involves jurisdiction granted to United States District Courts to enforce internal revenue laws. This statute too is irrelevant to the allegations raised in Plaintiff's Amended Complaint and inapplicable to Plaintiff's ability to maintain a private civil cause of action. Thus, the Court dismisses these claims.

### 6. Claims for Damages

In addition, Plaintiff's federal claims against the State of Tennessee, and Defendants Campbell, Parker, and Parks in their official capacities, are not cognizable, because neither a State, nor its employees acting in their official capacities, is a "person" subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Moreover, the doctrine of sovereign immunity prohibits suit against a State or its agencies in federal court for damages, unless Congress has abrogated its immunity or the State has expressly waived it. *See WCI, Inc. v. Ohio Dep't of Public Safety*, 18 F.4th 509, 513-14 (6th Cir. Nov. 17, 2021). Tennessee has not waived its immunity under Section 1983 or State tort law. *See* Tenn. Code Ann. § 20-13-102(a); *Wilson v. Middle Tenn. State Univ.*, No. 3:19-0798, 2020 WL 6776300, at *4 (M.D. Tenn. Apr. 23, 2020) ("By statute, the State of Tennessee has expressly preserved its sovereign immunity."); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under Section 1983); *Burton v. Durnin*, No. 3:11-CV-429, 2012 WL 946747, at *8 (E.D. Tenn. Mar. 20, 2012) (finding that the "[S]tate of Tennessee has not consented to being sued in federal court for

tort claims brought under state law"). Accordingly, the Court must dismiss Plaintiff's claim for damages against the State and against Defendants in their official capacities.[2]

### 7. State Law Claims

Because Plaintiff has failed to state a valid claim under federal law, this federal court declines to exercise jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motions to file a Second Amended Complaint [Docs. 63, 64] and **GRANTS** Defendants' motion to dismiss Plaintiff's operative Amended Complaint [Doc. 31]. The Court **DISMISSES** Plaintiff's federal claims **with prejudice** for failure to state a claim upon which relief may be granted and **DISMISSES** Plaintiff's State law claims **without prejudice**.

Further, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and that Plaintiff will be **DENIED** leave to proceed *in forma pauperis* on any subsequent appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**SO ORDERED. AN APPROPRIATE JUDGMENT SHALL ENTER.**

**ENTER:**

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

---

[2] Although a state itself is not a "person" subject to liability under Section 1983, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n. 10 (quoting *Graham*, 473 U.S. at 167 n. 14 (1985)). Because Plaintiff has not stated a cognizable federal or constitutional claim, however, it is unnecessary to determine whether he has stated sufficient factual detail against each Defendant to proceed on his claims for injunctive relief.